No. 25-1248 (L)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

STATE OF MARYLAND, et al.,

          Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,

          Defendants-Appellants.

On Appeal from the United States District Court
for the District of Maryland

**REPLY IN SUPPORT OF MOTION
FOR A STAY PENDING APPEAL**

YAAKOV M. ROTH
  *Acting Assistant Attorney
  General*

KELLY O. HAYES
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
STEVEN A. MYERS
  *Attorneys, Appellate Staff
  Civil Division, Room 7232
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-8648*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................1

I. The Government Is Likely To Prevail On The Merits......................1

    A. The District Court Lacked Jurisdiction. ................................1

        1. Article III Standing............................................................1

        2. Civil Service Reform Act Channeling ............................5

    B. The Government Did Not Conduct A Reduction In
Force Requiring Notice To States.............................................6

II. The Equitable Factors Favor A Stay. ...............................................8

CONCLUSION ...................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

The district court's sweeping order compelling the reinstatement of thousands of terminated employees at twenty different federal agencies is legally indefensible and irreparably harms the federal government every day that it remains in effect. Nothing in the states' opposition undermines any of those points, and this Court should enter a stay pending appeal.

## ARGUMENT

### I. The Government Is Likely To Prevail On The Merits.

#### A. The District Court Lacked Jurisdiction.

##### 1. Article III Standing

The states' cursory efforts to defend the district court's standing analysis, *see* Resp. 15-17, are unavailing. As set out in our motion, the district court rested its standing analysis on only one theory of injury—an informational injury that led to downstream economic harms. Op. 17. But that theory fails for multiple reasons.

At the outset, there is a basic mismatch between the purported informational injury the states assert (failure to receive pre-termination notice) and the sweeping remedy the district court imposed (reinstatement of thousands of employees). As our motion explained, a

plaintiff seeking injunctive relief on a theory of informational injury asserts that a judicial order would lead him to obtain information he lacks. Mot. 16-17. Here, the states are undoubtedly aware of the terminations that they challenge in this lawsuit, and to the extent they suggest otherwise, *see* Resp. 16, they provide no specifics as to what information is now being withheld from them.

The primary case upon which plaintiffs rely, *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 171 (4th Cir. 2023), *cited in* Resp. 17, only confirms the incongruity between the state's theory of informational injury and the district court's reinstatement order. In *Laufer*, a disabled plaintiff alleged an "informational injury" from a lack of required information on a hotel website about "accessible features" and sought an order requiring the hotel to provide the information on its website consistent with the regulation. *Id.* at 159-60; *see also* Complaint at 9, *Laufer v. Naranda Hotels LLC*, No. 1:20-cv-02136-CCB (D. Md. Aug. 17, 2020), ECF No. 4. The court accepted that Laufer had "alleged an informational injury that gives her Article III standing to sue," *Laufer*, 60 F.4th at 166, and given the obvious connection between the asserted injury (missing information) and the requested relief (an

2

order to provide it), the Court observed that the defendant had not even contested redressability in district court, *id.* at 167.

Here, by contrast, the court's reinstatement order does nothing to remedy the informational injury of which the states complain, and indeed that purported informational injury no longer existed by the time the states filed their lawsuit. Plaintiffs, like the district court, cite no authority establishing that an informational injury remains redressable even after the plaintiff has obtained the information it claimed was missing, or that courts may grant relief for an "informational injury" that goes far beyond redressing the lack of information itself.

The states' asserted "informational injury" fails in any event. The states never dispute that informational injury only suffices when it causes "'real'" harms that "are of the type that have 'traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 341 (2016)); *see also* Resp. 15-16 (conceding the point). The states' asserted downstream harms of "decreased tax revenue," "increased reliance on state social

service programs," "surges in unemployment claims," "disruptions to state programs depending on federal workers," and costs from providing other resources to terminated employees, *see* Resp. 16, are not cognizable Article III injuries-in-fact, *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023).

Other than an irrelevant citation to a case about tax penalties and the Bankruptcy Code, *see In re Yahweh Ctr., Inc.*, 27 F.4th 960 (4th Cir. 2022), *cited in* Resp. 17, the states' only attempt to distinguish *Texas* is their assertion that their injuries derive from their "statutory right to advanced notice." Resp. 17. Yet the states' articulation of a statutory basis for their claims cannot solve their problem under Article III, which "requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *see also TransUnion, LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III … .").

## 2. Civil Service Reform Act Channeling

The district court's order compelling the government to reinstate thousands of terminated federal employees flouted the exclusive remedial scheme created by the Civil Service Reform Act and the Federal Service Labor-Management Relations Statute. The states' only real defense of the district court's holding is to observe that Congress did not provide states an opportunity to challenge federal employees' terminations, *see* Resp. 19, but that is exactly the point: in authorizing challenges to employment decisions only by unions, employees, and applicants for employment, Congress deliberately denied review to anyone else. *See Block v. Community Nutrition Inst.*, 467 U.S. 340 (1984); *United States v. Fausto*, 484 U.S. 439 (1988). The states thus plainly fall within a "class" of parties consciously denied the opportunity to seek review of federal employees' terminations. *Cf.* Resp. 19 (quoting *Koretoff v. Vilsack*, 614 F.3d 532, 536 (D.C. Cir. 2010)).

The states' attempt to distinguish *Block* fails. *See* Resp. 20. They observe that the statutory scheme in *Block* did not permit "participation by consumers," *id.* (quoting *Block*, 467 U.S. at 347), but the same is true of states here; no provision of the CSRA creates an "express provision

5

for participation" by states, *Block*, 467 U.S. at 347. While federal law requires *notice* to states of certain reductions in force, *see* Resp. 20, it nowhere provides that states may *enforce* this notice obligation in either an administrative or a judicial proceeding. And while plaintiffs attempt to distance their claim from a "garden-variety employment claim[]," *id.*, their arguments confirm that at bottom they seek to challenge federal personnel decisions. Indeed, the states offer no response to our observation that the states are bringing the same claim, on the same theory, seeking the same relief, that many terminated employees are seeking themselves. *See* Mot. 22.

## B. The Government Did Not Conduct A Reduction In Force Requiring Notice To States.

Plaintiffs do not rehabilitate the district court's flawed conclusion that agencies' terminations of probationary employees amounted to an unannounced reduction in force. A reduction in force does not occur whenever the government terminates a large number of employees. *See* Mot. 23-25. Instead, the reduction in force regulations provide that when an agency "formally announce[s] a reduction in force," it may eliminate "positions" "because of lack of work; shortage of funds; insufficient personnel ceiling; reorganization; the exercise of

6

reemployment rights or restoration rights; or reclassification of an employee's position d[u]e to erosion of duties." 5 C.F.R. § 351.201(a)(1)-(2). Plaintiffs continue to observe that the government terminated a significant number of probationary employees, *see* Mot. 11-15, but they do not dispute our demonstration that a reduction in force did not occur because the government did not eliminate positions pursuant to a reorganization. Instead, the agencies simply elected to terminate certain individuals. And as the states further acknowledge, those terminations generally purported to be for cause. *See* Resp. 7.

The states' argument thus boils down to their belief that the government did not *actually* have sufficient cause to terminate anyone. *See, e.g.*, Resp. 13 (suggesting that agencies were not "*honestly …  dissatisfied*" with employees' performance (quotation marks omitted)); *see also* Resp. 8 n.2 (noting that some terminated employees had recently obtained positive performance reviews). As the government has observed, that would be a remarkable conclusion to reach in litigation to which the affected employees are not parties, and the states ignore the "numerous ways that the law treats probationary and non-probationary employees differently." *National Treasury Emps. Union v.*

7

*Federal Labor Relations Auth.*, 737 F.3d 273, 277 (4th Cir. 2013). In any case, the legality of any individual employee's termination under the standards applicable to probationary employees is an entirely distinct question from whether the government conducted a reduction in force of which the states were entitled to notice. *See* Mot. 25. Even if it were true that the government lacked sufficient cause to fire certain probationary employees, that would not mean that the government had conducted a reduction in force—it would mean that the terminations were unlawful, a claim that may be pursued by affected employees under the mechanisms created by Congress.

## II. The Equitable Factors Favor A Stay.

Finally, the equitable factors favor a stay. As set out above, the states do not suffer Article III injury when the federal government terminates certain of their citizens' employment, *see supra* pp.1-4, let alone irreparable harm sufficient to justify a preliminary injunction. Nor do the states dispute that every day the injunction remains in place, the government is obligated to continue paying thousands of employees it had previously terminated, with no practical mechanism to recoup those funds if it prevails on appeal—a problem exacerbated by

8

the district court's failure to require each plaintiff state to post more than a nominal bond. As the Supreme Court just confirmed last week, such considerations counsel in favor of a stay. *See Department of Educ. v. California*, No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025) (per curiam) (granting stay of preliminary injunction where "respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed" and "the District Court declined to impose bond").

The states' attempt to invoke injuries to the employees themselves, *see* Resp. 21-22, is unavailing. Those individuals are not parties to this action, and indeed the district court has suggested that there is not even an "identity of interests between the States and the fired employees." Dkt. No. 125 at 37. And as our motion explained, many of those employees are endeavoring to pursue their own claims pursuant to the statutory scheme that Congress enacted.[1]

---

[1] The states observe that the district court's order permits defendants to "move forward with legitimate RIFs during the pendency of this case, so long as they follow the proper procedures." Resp. 23. That may be, but neither federal personnel law nor the U.S. Constitution contemplates that the legality of any employee's termination—whether the terminations at issue here, or any future RIF

*Continued on next page.*

Finally, the states observe that the government has been in compliance with the temporary restraining order for several weeks, such that staying the preliminary injunction could "disrupt the status quo" by leading to additional terminations. Mot. 22. But while it is true that the government made enormous efforts to comply with the temporary restraining order by reinstating affected employees, the district court's entry of a legally erroneous temporary restraining order (followed by a legally erroneous preliminary injunction) is a reason for this Court to correct the district court's errors—not to compound them. The best way to provide certainty for the federal government, the states, and the employees themselves is for this Court to confirm that this case should never have been in federal court in the first place.

---

that an agency might execute—will be subject to the continuing jurisdiction of a federal district court at the behest of state governments.

## CONCLUSION

The Court should stay the preliminary injunction pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

KELLY O. HAYES
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

 *s/ Steven A. Myers*
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

April 2025

# CERTIFICATE OF COMPLIANCE

I hereby certify that this reply satisfies the type-volume requirements set out in Rule 27(d)(2)(C) because it contains 1905 words. It was prepared using Microsoft Word in Century Schoolbook, 14-point font, a proportionally spaced typeface.

*s/ Steven A. Myers*
STEVEN A. MYERS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Steven A. Myers*
Steven A. Myers
